UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. 20-21008-CV-CMA

MARY KATE WALTON,

    Plaintiff,
v.

CARNIVAL CORPORATION,

    Defendant.
_____/

### CARNIVAL'S UNOPPOSED MOTION FOR STAY AND, ADDITIONALLY OR ALTERNATIVELY, MOTION FOR ENTRY OF AN ORDER ADMINISTRATIVELY CLOSING THIS CASE

Carnival Corporation d/b/a Carnival Cruise Line ("Carnival") moves for entry of a Stay and extension of all pending deadlines in the instant case through August 1st, 2020. Additionally, or alternatively, Carnival moves for entry of an order administratively closing this case and suspending all pending deadlines, including Defendant's responsive pleading and the Joint Scheduling Report pending further order from this Court. In support of this motion, Carnival states:

### BACKGROUND

This is a maritime personal injury case filed by the Plaintiff for injuries allegedly sustained on the Carnival Fantasy. [DE 1]. Due to the Sheltering In Place orders, the Undersigned Counsel accepted service of process of the Complaint pursuant to Rule 12 on April 1, 2020. [DE 8]. Hence, Defendant's Responsive Pleading is not due until June 1, 2020 [DE 8]. This Honorable Court has entered an Order Requiring Scheduling Report, which states that the Joint Scheduling Report is due today, May 6, 2020. [DE 7]. However, in light of the fact that Defendant has not completed its investigation and has not filed its Responsive Pleading, the

Defendant requests that the Order Requiring Scheduling Report [DE 7] be Stayed as part of the relief sought herein.

These are unprecedented times. The U.S. economy, and many more of the world's strongest economies, have been dramatically and negatively impacted for over a month to try and slow the spread of the Coronavirus ("COVID-19") pandemic. In the U.S. alone, over 71,000 people have died due to COVID-19 with health experts anticipating thousands more. Millions of Americans have already lost their jobs. Businesses large and small, including Carnival, are fighting to preserve their companies' future and their employees' livelihoods. This is not business as usual. Litigants should not be expected, or forced, to litigate as usual.

"The cruise industry and Carnival have been particularly, and in many ways disproportionately, affected by this pandemic. On March 13, 2020, Carnival shut down all cruise operations and subsequently closed its Miami offices due to the COVID-19 pandemic. Given the continued spread of COVID-19 throughout the U.S. and based on the Centers for Disease Control and Prevention's ("CDC") anticipated extension of social-distancing guidelines into June 2020, Carnival extended the suspension of its cruise operations through June 27, 2020. The CDC has since extended its "No Sail Order" to all U.S. cruise ships until either the expiration of the Secretary of Health and Human Services' declaration that COVID-19 constitutes a public health emergency, the CDC Director rescinds or modifies the order based on public health considerations, or 100 days from the date of the publication of the order which occurred on April 15, 2020.  100 days from April 15 is July 24, 2020.   (The CDC Order is published in the Federal Register and can be located at https://www.federalregister.gov/d/2020-07930).

On May 4, 2020, Carnival announced a further complete pause in operations through at least August 31, 2020, advising that may try to operate a limited number of cruises from three

homeports in North America beginning on August 1, 2020 should circumstances allow it. Only eight of Carnival's 27 ships could be in operation at that time. All other North American and Australian cruise operations are suspended through August 31, 2020. It remains unclear precisely when Carnival will be able to reopen its Miami offices and resume all normal cruise operations. Any resumption of cruise operations will of course be contingent upon, and subject to, additional directives and orders from government officials and entities, as the company continues its cooperation with federal, state, local and international government officials is support of public health efforts.

In the interim, the majority of the Carnival fleet is being used to repatriate tens of thousands of crewmembers to their home countries and none of the ships are available for inspections or visits at ports in North America. The underlying incident in this case occurred on board the Carnival Fantasy. Specifically the Carnival Fantasy is presently tasked with repatriating crew members to their home countries in Central America and it is unknown when the ship will be able to return to North America.

The need to continue the Stay of this case at least through August 1, 2020 is based on the following:

1. This litigation involves an alleged fall on a staircase on the Carnival Fantasy, which necessitates both parties having the ability to conduct a physical inspection, analysis and testing of the deck surface. The Carnival Fantasy is unavailable for inspection. It is currently on its way to repatriate crew members in Central America, and it is currently unknown when it will be available for either party to inspect for purposes of this litigation due to the future uncertainty of COVID-19 restrictions and logistics.

2. The crew members known to Defendant at this preliminary stage are currently not

accessible to participate in discovery or sit for depositions, as they are currently in their home countries (ie, India, South Africa and United Kingdom); or on a vessel repatriating crew members to the Philippines.  It is unknown when they will be available to participate given the future uncertainty of our circumstances.

3. Plaintiff alleges an orthopedic injury, which necessitates an in person Rule 26 physical examination in the Southern District of Florida.   With the current status of the COVID crisis, it is in Plaintiff's best interest not to have to travel from Mississippi to South Florida for an in person examination, which is required to evaluate her injury.

The current imperative for the Company is to get its tens of thousands of shipboard crew members off ships and transported home.  With commercial flight options almost non-existent, the Company is now getting ready to sail almost half its fleet of 27 ships to Europe, India, Latin America and Asia to get crew home. Ships are also being reduced to safe minimum staffing levels—less than two hundred persons per ship—retaining only those crewmembers deemed essential to the continued safe operation of the vessel. The few crewmembers who remain onboard are unable to disembark as they otherwise normally would due to strict measures enacted by local and state governments to prevent the spread of COVID-19. They are also unable to assist with litigation-related tasks as they normally would, such as searching for relevant documents, records, and information, due to limited personnel and reduced staffing levels.

Given the extraordinary impact of the measures being taken by federal, state, and municipal governments to restrict the transmission of COVID-19, and the resulting unprecedented impact on business and society at large, and in particular on the cruise industry, Carnival respectfully requests a stay of this litigation through August 1st, 2020, for further review by this Court at that time, which is necessary to ensure the due process rights of parties and the

safety of litigants, their employees, the Court, and the safety of the public at large. Additionally, or alternatively, Carnival respectfully requests that this Court administratively close this case and suspending all pending deadlines pending further order from this Court. Unless this Court grants some form of relief sought by this motion, Carnival will be unfairly prejudiced and impaired in its ability to properly defend against the claims brought in this lawsuit.

## DISCUSSION

Five days after initially announcing its cessation of operations on March 14, 2020, Carnival filed a Motion for Entry of Administrative Order with Chief Judge K. Michael Moore seeking an initial 45-day stay of all of Carnival's active federal cases in this District. On March 23, 2020, the Chief Judge denied the Motion finding it more appropriate for the judge in each matter to consider the issue individually. (*See* Paperless Order on Motion, ECF No. 26, *Walters v. Carnival Corp.*, No. 1:20-cv-20207-KMM (S.D. Fla. Mar. 23, 2020), attached as **Exhibit A**). Carnival has since filed separate motions seeking a stay in each active lawsuit involving it in this District. Several Judges have granted these motions for stay, and some have granted other relief including administratively closing cases due to the COVID-19 pandemic pending further orders re-opening same.[1]

Based on the extended suspension of Carnival's normal business operations through July and the various state and local government orders restricting the ability of residents in this

---

[1] *See, e.g.,* Order Granting Carnival Corporation's Unopposed Motion for Stay, ECF No. 37, *Eisenman v. Carnival Corp.*, No. 1:19-cv-22431-King (S.D. Fla. Mar. 25, 2020); Administrative Order Closing Case, ECF No. 15, *Kopp v. Carnival Corp.*, No. 1:20-cv-202456-Altonaga (S.D. Fla. Mar. 25, 2020); Administrative Order Closing Case for Statistical Purposes and Placing Matter in Civil Suspense File, ECF No. 14, *Hodnett v. Carnival Corp.*, No. 1:19-cv-25314-Martinez (S.D. Fla. Mar. 26, 2020); Administrative Order Closing Case, ECF No. 56, *Johnson v. Carnival Corp.*, No. 1:19-cv-25259-Bloom (S.D. Fla. Mar. 30, 2020); Paperless Order Converting Carnival's Unopposed Motion to Stay to a Motion for Continuance . . . and Granting Said Converted Motion, ECF No. 21, *Scott-Wolf v. Carnival Corp.*, No. 1:19-cv-24262-Huck (S.D. Fla. Mar. 27, 2020); Paperless Order Granting Motion to Stay, ECF No. 10, *Sobrado v. Carnival Corp.*, No. 1:20-cv-20734-Williams (S.D. Fla. Mar. 27, 2020); Paperless Order, ECF No. 37, *Burt v. Carnival Corp.*, No. 1:17-cv-24667-Gayles (S.D. Fla. Mar. 18, 2020) (extending existing stay of case for an additional 45 days); (orders attached as **Composite Exhibit B**).

District—many of whom work with or for Carnival—to leave their homes, meet with others, or even go about their daily lives, this Court should further stay this case through August 1, 2020, with further review by this Court at that time. As further explained below, good cause exists for the Court to grant this motion.

### 1. Federal and State Court Orders and Government Action in Response to COVID-19

In the Southern District, Chief Judge Moore has issued several administrative orders recognizing limitations in litigation due to the COVID-19 pandemic, continuing all jury trials and grand jury proceedings through July 6, 2020, encouraging Judges to conduct proceedings remotely where practicable, and eliminating nearly all in-person proceedings. (*See* S.D. Fla Administrative Orders No. 2020-18, 2020-20, 2020-21, 2020-22, 2020-23, and 2020-24 attached as **Composite Exhibit C**). In a recent administrative order, Chief Judge Moore found that "emergency conditions due to the COVID-19 virus outbreak will materially affect the functioning of the Courts within this District." (**Ex. C**, S.D. Fla. A.O. No. 2020-23). He further found that certain proceedings "cannot be conducted in person without seriously jeopardizing public health and safety." (*Id.*).

Miami-Dade's state courts have also taken action to combat the spread of COVID-19 and protect the health and safety of their employees, litigants, attorneys, and the general public by staying and continuing all trial schedules and deadlines (except emergency matters) through June 1, 2020. (*See* Fla. 11th Cir. Administrative Orders No. 20-02, 20-03, 20-04, 20-08, and 20-08 A1, attached as **Composite Exhibit D**). Florida's Supreme Court has responded to the COVID-19 pandemic by suspending all grand jury proceedings, jury selection proceedings, and criminal and civil jury trials statewide through May 29, 2020. (*See* Fla. S. Ct. Administrative Orders No. 20-12, 20-13, 20-15, 20-17, and 20-23 attached as **Composite Exhibit E**).

Florida Governor Ron DeSantis, Miami-Dade County Mayor Carlos Gimenez, and City of Miami Mayor Francis Suarez have also issued executive orders closing most businesses and public places in this District and requiring residents to shelter in place and stay at home. Nearly all offices remain closed, including law firms. Attorneys and other individuals, including nearly all of Carnival's shore-side employees, are working remotely to the best of their capabilities. Travel is essentially banned under the various "safer-at-home" orders in effect. Access to resources and other information needed to prepare, file, serve, and effectuate pleadings and conduct discovery is extremely limited or unavailable altogether.

### 2. COVID-19's Impact on Carnival and its Ability to Defend Against Lawsuits and Fulfill Discovery Obligations as a Litigant

Concepts of *Force Majeure,* impracticability, and impossibility are applicable to pandemics, epidemics, and quarantines, such as those connected to COVID-19. In particular, Carnival has faced numerous challenges in responding to active litigation as it focuses on the unprecedented action of suspending operations, such as:

1. Working with public health officials and closely monitoring the health of all crew who may have been exposed to COVID-19 from guests that have debarked the ship prior to the suspension of service;

2. Managing and provisioning for ships, most of which are not in the home ports at which they normally operate;

3. Securing and maintaining limited access to ships;

4. Determining staffing plans for ships given the significant reduction in personnel;

5. Implementing shore-side work from home policies, including personnel that did not have telecommuting capability, while at the same time, responding to record call volumes from guests who have been impacted by the disruption;

6. Identifying short-term and long-term operational changes to react to the constantly changing circumstances;

7

7. Access to crewmember witnesses for depositions, hearings, trials, or other fact finding is extremely difficult if not practically impossible given that most are off contract, have returned to their foreign homes, or if still onboard are involved in other duties necessary to maintain the safe operation of the ship as a result of the COVID-19 crisis;

8. Access to shore-side personnel, documents, and information needed to properly investigate claims and participate in normal discovery is severely limited due to the closure of Carnival's Miami offices and its transition to working remotely/off-site during this period;

9. Travel (domestic and international) is essentially barred;

10. Corporate offices have been transitioned to a remote telecommuting status so both shipboard and shore-side witnesses are largely unavailable;

11. Carnival's in-house lawyers and adjusters are primarily working from home as are all of the support staff;

12. Most of Carnival's outside law firms are working remotely as well due to government orders requiring residents to shelter at home and work remotely;

13. Ships are frequently moving and relocating, they are not always in a specific port as they normally would be, and even when in port access to the ships is extremely limited and crewmembers are not permitted to disembark as they normally would;

14. Not all of the current crew members will remain onboard during the COVID-19 crisis, and most have already returned to their home countries abroad. Some ships have had a greater reduction in workforce than others.

Regarding this specific case, Carnival is severely restricted in terms of its access to facilities, access to employees, access to databases, documents, and information—both shoreside and onboard its numerous ships—ability to meet and communicate with witnesses and its own attorneys, search computer systems, provide witnesses and evidence, and perform the functions a litigant would otherwise perform, but for the COVID-19 crisis. This has made it all but impossible for Carnival to timely and properly carry out even basic litigation-related activities such as, searching for relevant documents and information regarding a claim or incident,

responding to discovery requests, making its vessels available for inspections, and making crewmembers and other Carnival employees available for deposition.

Due to the closure of most businesses and restrictions requiring residents to shelter at home, Carnival's undersigned counsel will also be severely impaired in its ability to prepare a meaningful defense in this matter unless a stay is entered. Discovery cannot proceed as usual without the assistance of third parties, many of which have been deemed "non-essential businesses" and are presently closed. Obtaining records from third parties, such as Plaintiff's employers and medical providers, is essential to properly defend against an action for personal injuries such as this. But the present COVID-19 pandemic has made it extremely difficult to obtain even this basic, essential discovery due to the inaccessibility of these third parties during these times.

Given the severe travel restrictions currently in place, it is presently impossible for Carnival to coordinate or require claimants such as Plaintiff to travel from their home states into this jurisdiction to attend compulsory medical examinations and depositions. These are basic forms of discovery used to determine the extent of any injuries alleged by a claimant, which cannot be performed given the current, unprecedented situation.

Depositions—where it is commonplace for several people to sit within close proximity to each other at the same table for several hours—have come to a standstill and become practically impossible due to social distancing requirements enacted by the CDC and local governments. Forcing litigants to proceed in litigating their cases despite global travel restrictions and remote social distancing directives, and to conduct important depositions by remote means like video-conferencing would diminish the effectiveness of this key tool in the truth-gathering process and would further diminish Carnival's ability to mount a meaningful defense and adequately prepare

itself for trial. "The Plaintiff's deposition is an important step in the pretrial discovery process." *Hogue v. McHugh*, 2012 U.S. Dist. LEXIS 204432 (S.D. Fla. 2012). Plaintiff depositions are paramount in determining the factual circumstances of a case and a plaintiff's credibility. *See Van Calcar v. Royal Caribbean Cruises, Ltd*., 2015 U.S. Dist. LEXIS 195551 (S.D. Fla. 2015) ("While a video-conference deposition might not present the same problem concerning documents and tangible exhibits, defense counsel would be deprived of the ability to effectively and accurately observe the demeanor and facial expressions of Plaintiff in person, which would seem paramount in terms of judging her credibility."); *see also Vereen v. Lou Sobh Auto*., 2012 U.S. Dist. LEXIS 23113 ("Plaintiff's deposition testimony establishes several important factual matters."). "Medical examinations are crucial evidence in a personal injury case." *Smith v. Jacobs Eng'g Grp., Inc*., 2008 U.S. Dist. LEXIS 125633 (N.D. Fla. 2008). "Evidence concerning 'the defendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense.'" *Baptista v. Carnival Corp*., 2018 U.S. Dist. LEXIS 2288221 (S.D. Fla. 2018).

Further, defending against a personal injury lawsuit like this almost always requires the assistance of expert witnesses, including physicians, engineers, economists, and other professionals. However, many of these individuals will be unable to assist Carnival during the present situation due to closure of their own offices because of the COVID-19 pandemic or, in the case of certain physicians, the need to assist patients actually suffering from COVID-19. Even if Carnival could still retain certain expert witnesses during this time (but not all), they would still need the basic discovery addressed above (third party records, site inspections, and witness testimony), which is unavailable now, to complete their own investigations and prepare their opinions.

**Carnival's undersigned counsel have already experienced difficulties attempting to proceed with the orderly course of this case**:

1. This litigation involves an alleged fall on a staircase on the Carnival Fantasy, which necessitates both parties having the ability to conduct a physical inspection, analysis and testing of the deck surface. The Carnival Fantasy is unavailable for inspection. It is currently on its way to repatriate crew members in Central America, and it is currently unknown when it will be available for either party to inspect for purposes of this litigation due to the future uncertainty of COVID-19 restrictions and logistics.

2. The crew members known to Defendant at this preliminary stage are currently not accessible to participate in discovery or sit for depositions, as they are currently in their home countries (ie, India, South Africa and United Kingdom); or on a vessel repatriating crew members to the Philippines. It is unknown when they will be available to participate given the future uncertainty of our circumstances.

3. Plaintiff alleges an orthopedic injury, which necessitates an in person Rule 26 physical examination in the Southern District of Florida. With the current status of the COVID crisis, it is in Plaintiff's best interest not to have to travel from Mississippi to South Florida for an in person examination, which is required to evaluate her injury.

### 3. Good Cause Exists to Grant a Stay and Administratively Close this Case

Unless this Court grants the requested relief, Carnival will suffer undue prejudice and will be prevented from fully and properly defending itself in this action. This Court has broad discretion to manage its docket and to grant continuances and extensions of time for good cause shown. Fed. R. Civ. P. 6(b) and 16(b)(4). *See also* S.D. Fla. L.R. 7.1(a)(1)(J). "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily

11

varies with the circumstances of each case." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2020).

Good cause to modify a scheduling order may be found to exist when the moving party shows that it diligently assisted the district court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order. *See Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009). That is precisely the case here. Neither Carnival nor Plaintiff could have reasonably foreseen that the entire U.S. economy and society as a whole would be shut down for multiple months due to a global pandemic. Having quickly realized that it would be unable to properly prepare itself to defend against this matter or to even carry out usual litigation-related tasks as discussed above, Carnival acted diligently to seek relief from the present scheduling order and other deadlines in this case.

As one Judge in this District previously ruled, "[g]iven the inability to proceed with the orderly progress of the case due to the uncertainty regarding the duration of the restrictions, and to conserve the parties' and judicial resources," a stay and extension of all pending deadlines is eminently reasonable here. (*See* **Ex. B,** Administrative Order Closing Case, ECF No. 15, *Kopp v. Carnival Corp.*, No. 1:20-cv-202456-Altonaga (S.D. Fla. Mar. 25, 2020)).

## CONCLUSION

These are unprecedented circumstances. Time, energy, and personnel must be devoted to limiting social interaction and combatting the further spread of COVID-19. Witness testimony, information, evidence, and even basic discovery have become extremely difficult, if not impossible, to obtain. None of Carnival's ships are where they would normally be. Most of its

crewmembers have returned to their homes to await the resumption of normal cruise operations. The crewmembers who remain are entirely focused on maintaining the safe operation of the ships. They are generally unavailable to assist with the gathering of information and documents necessary to defend against claims and properly fulfill a litigant's discovery obligations. Further, those who remain onboard are unable to disembark the vessel due to strict restrictions placed on travel and, more specifically, on cruise ship travel.

Carnival personnel and its in-house and outside counsel are all limited in their ability to assist with the defense of this lawsuit due to the operational restrictions under which they are working and various government orders mandating social-distancing and requiring residents to stay at home. Having recognized the numerous problems presented by all these restrictions and the impossibility of "business as usual" caused by COVID-19, Carnival has voluntarily extended the one year contractual statute of limitations applicable to passenger lawsuits through June 12, 2020. Given the unforeseeable problems caused by the COVID-19 pandemic, and the inability to properly defend against lawsuits like this or to fulfill basic discovery obligations during these times, there is good cause to grant this motion.

WHEREFORE, Carnival respectfully requests that a Stay be Granted through August 1, 2020 (inclusive of the Defendant's Responsive Pleading and Order Requiring Scheduling Report), for the Court's re-evaluation of same at that time. Additionally, or alternatively, Carnival respectfully requests that this Court administratively close this case and suspending all pending deadlines pending further order from this Court, and grant any additional relief this Court deems appropriate under the circumstances. A Proposed Order granting this motion is attached as **Exhibit F**.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3), Carnival's undersigned counsel conferred with Plaintiff's counsel, who advised that Counsel has no objection to the relief requested in this Motion.

Respectfully Submitted,

By: *s/ Donnise DeSouza Webb, Esq.*  .
DONNISE DESOUZA WEBB, ESQ.
Fla. Bar No: 879398

## CERTIFICATE OF SERVICE

I certify that on May 6, 2020, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DONNISE DESOUZA WEBB, ESQUIRE
CARNIVAL CORPORATION
3655 N.W. 87th Avenue
Miami, Florida 33178-2428
(305) 406-4838 Direct Phone
(305) 599-2600 Ext. 18024 Assistant's Phone
(305) 406-4732 Telefax
Dedicated Judge's Phone (305) 406-5399
(For Judges only)

By: *s/ Donnise DeSouza Webb, Esq.*  .
DONNISE DESOUZA WEBB, ESQ.
Fla. Bar No: 879398

## **SERVICE LIST**

| BRANDON L. CHASE, ESQ.<br>brandon@chasejustice.com<br>LAW OFFICES OF BRANDON L. CHASE, P.A.<br>2800 Ponce de Leon Blvd., Suite 1100<br>Coral Gables, FL  33134<br>Telephone: 305-677-2228<br>Facsimile: 305-677-3232<br>Attorneys for Plaintiff, WALTON | DONNISE DESOUZA WEBB, ESQ.<br>ddesouza@carnival.com<br>Carnival Cruise Line<br>3655 N.W. 87th Avenue<br>Miami, FL 33178<br>Telephone: (305) 406-4838<br>Facsimile: (305) 406-4732<br>Attorney for Defendant, CARNIVAL |
|---|---|

[Service via CM/ECF Notice of Electronic Filing and via U.S. Mail]